# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

CIVIL ACTION NO. 17-44-DLB

KING TAYLOR                                                                      PLAINTIFF

V.                    **MEMORANDUM OPINION AND ORDER**

NANCY A. BERRYHILL, Commissioner
of the Social Security Administration                              DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will affirm the Commissioner's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On May 22, 2009, Plaintiff King Taylor applied for disability insurance benefits (DIB) and supplemental security income (SSI), alleging disability beginning May 2, 2009. (Tr. 198-202; 203-212). (Tr. 276). On June 15, 2011, Administrative Law Judge (ALJ) John M. Prince issued a fully favorable decision and awarded Plaintiff DIB and SSI benefits. *Id.* Because medical improvement was "expected with appropriate treatment given the claimant's youth," ALJ Prince recommended that a continuing disability review be conducted twelve months after his decision. *Id.*

On March 29, 2013, it was determined that the Plaintiff was no longer disabled. (Tr. 160; Tr. 277-278). That determination was upheld upon reconsideration after a

1

disability hearing by a State Agency Disability Hearing Officer. (Tr. 289-305). At Plaintiff's request, a further administrative hearing was conducted on October 27, 2015, before ALJ Anne Shaughnessy. (Tr. 243-266). On January 8, 2016, ALJ Shaughnessy ruled that Plaintiff's disability had ended and that he was not entitled to benefits. (Tr. 160-173). This decision became the final decision of the Commissioner on April 4, 2017, when the Appeals Council denied Plaintiff's request for review.[1] (Tr. 1-8).

Plaintiff filed the instant *pro se* action on March 14, 2017, seeking review of the Commissioner's decision to terminate his DIB and SSI benefits. (Doc. # 2). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. # 13 and 15).

Plaintiff has also filed a Motion for Extension of Time for Filing Additional Evidence. (Doc. # 16). Plaintiff's Motion requests that the Court consider additional "exhibits of evidence." *Id.* The Motion must be denied for two reasons. First, and most importantly, the Court's review is limited to the certified administrative record. 42 U.S.C. § 405(g); *Salyer v. Comm'r of Soc. Sec.*, 574 F. App'x 595, 597 (6th Cir. 2014). Second, an examination of the fifty-three pages Plaintiff attached to his Motion reveal that these documents are not "evidence" and are wholly unrelated to the issues in this social-security appeal. (Doc. # 16-1). Plaintiff, apparently attempting to use this social-security appeal as a vehicle for all legal injuries he has allegedly suffered, complains of food poisoning he contracted from several fast-food restaurants, car troubles and a dispute with the auto-mechanic company, and a defective cell phone that was lost in the mail. *Id.* The fifty-

---

[1] The Appeals Council reviewed ALJ Shaughnessy's decision twice. On January 13, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 9-16). Then, on April 4, 2017, the Appeals Council set aside its earlier action to consider additional information, but again denied Plaintiff's request for review. (Tr. 1-8).

three pages of exhibits are merely receipts and a record of these various complaints. *Id*. Because the "additional evidence" Plaintiff requests leave to submit is not part of the certified administrative record and is wholly unrelated to this case, the Court declines to consider it. Therefore, Plaintiff's Motion for Extension of Time for Filing Additional Evidence (Doc. # 16) is **denied**.

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

### B. Continuation of Benefits

The Commissioner's decision to award disability benefits does not end the inquiry into a recipient's entitlement to benefits. 42 U.S.C. § 423(f). Rather, a recipient's "continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994(a).

"When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where [he] is able to perform substantial gainful activity." *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing 42 U.S.C. § 423(f)(1)). "Improvement is measured from 'the most recent favorable decision' that the claimant was disabled," that date is known as the "comparison point decision." *Id.* (citing 20 C.F.R. § 416.994(b)(1)(i)). "There is no presumption of continuing disability." *Id.* (citing *Cutlip*, 25 F.3d at 286-87 n.1). "Instead, the Commissioner applies the procedures that are outlined in 20 C.F.R. §§ 404.1594 and 416.994 to determine whether a claimant's disability has ended and that [he] is now able to work." *Id.*

To determine if the claimant continues to be disabled, the ALJ employs an eight-step sequential analysis for Title II claims and a seven-step analysis for Title XVI claims. The analysis for Title II claims includes an additional, threshold consideration of the claimant's performance of substantial gainful activity; otherwise, the Title II and Title XVI analyses are the same. 20 C.F.R. §§ 404.1594(f)(1)l; 416.994(b)(5). Put another way, Steps Two through Eight in Title II claims mirror Steps One through Seven in Title XVI claims.

At Step One for Title II claims, the ALJ examines whether the claimant is engaging in substantial gainful activity. If the answer is yes, the claimant is no longer disabled. At Step Two for Title II claims and Step One for Title XVI claims, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does, his disability continues and the analysis ends. If not, the analysis continues.

The next steps focus on medical improvement—the critical question for continuation of benefits. At Step Three for Title II claims and Step Two for Title XVI claims, the ALJ must determine whether the claimant has experienced medical improvement. Step Four for Title II claims and Step Three for Title XVI claims requires the ALJ to determine whether any medical improvement is related to the claimant's ability to work. If there has not been medical improvement or if the medical improvement is not related to the individual's ability to perform work, the ALJ must continue to Step Five for Title II claims and Step Four for Title XVI claims, which considers whether any exceptions to the medical-improvement standard apply.

If there has been medical improvement related to the claimant's ability to work or an exception to the medical-improvement standard applies, the remainder of the ALJ's continuing-disability analysis parallels the initial-disability analysis. At Step Six for Title II claims and Step Five for Title XVI claims, the ALJ must determine whether all of the claimant's current impairments are severe. At Step Seven for Title II claims and Step Six for Title XVI claims, the ALJ assesses the claimant's residual functional capacity (RFC) based on his current impairments and determines if he can perform past relevant work.

If the claimant cannot perform his past relevant work, the ALJ proceeds to the last step and determines whether a significant number of other jobs exist in the national economy that the claimant can perform. If the claimant can perform other work, he is no longer disabled. If he cannot, his disability continues.

The burden of proving disability rests with the claimant. As to the final step, however, a limited burden shifts to the Social Security Administration. To support a finding that a claimant's disability has ended, the Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given his RFC, age, education, and work experience.

**C.     The ALJ's Determination**

At Step One,[2] the ALJ found that the Plaintiff has not engaged in substantial gainful activity since March 29, 2013, the date the prior disability ended. (Tr. 162). At Step Two, the ALJ determined that Plaintiff currently has the following medically determinable impairments: history of left shoulder surgery; degenerative disc disease; residual pain status post left second toe injury; post-traumatic stress disorder; and attention deficit hyperactivity disorder. *Id.* The ALJ determined that the Plaintiff's alleged migraine headaches, cysts, and asthma were non-severe impairments because they resulted "in no more than minimal limitations on his ability to engage in work activity."[3] (Tr. 163). Therefore, the ALJ concluded that Plaintiff does not have an impairment or combination

---

[2]     For clarity, and to limit potential confusion, the Court will explain and analyze the ALJ's decision by referring to Steps One through Eight of the Title II analysis and refrain from referring to the steps of the analysis under Title XVI.

[3]     ALJ Shaughnessy also found that Plaintiff's cyst condition was not severe because it "resolved in less than [twelve] months." (Tr. 163).

of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 163-165).

At Step Three, the ALJ concluded that medical improvement had occurred. (Tr. 165). Specifically, the ALJ found that the medical evidence demonstrated that Plaintiff's limitations associated with his left shoulder injury had improved due to "surgical repair of his left rotator cuff." *Id.* Accordingly, the ALJ proceeded to Step Four and determined that Plaintiff's medical improvement was related to the ability to work because the improvement resulted in an increase in his RFC. (Tr. 171). At Step Five, the ALJ found that no exception to the medical-improvement standard applied. *Id.*

At Step Six, the ALJ considered Plaintiff's current impairments and determined that they had "continued to be severe." *Id.* Then, the ALJ proceeded to Step Seven, and found that the Plaintiff possesses the residual functional capacity (RFC) to perform work at the medium exertional level, as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except for the following, additional limitations:

> The claimant is limited [to] occasional crawling and climbing of ladders, ropes, and scaffolds. The claimant can reach overhead occasionally. The claimant is limited to understanding, remembering, and carrying out simple instructions.

(Tr. 165). The ALJ's Step Seven analysis did not include a determination of whether Plaintiff had the ability to perform his past relevant work, because the Plaintiff has no past relevant work. (Tr. 171). Thus, the ALJ proceeded to Step Eight. *Id.* Based on Plaintiff's RFC and relying on the testimony of a vocational expert (VE), the ALJ concluded that there were other jobs that existed in significant numbers in the national economy that the Plaintiff could perform. (Tr. 171-172). Accordingly, the ALJ ruled that Plaintiff's disability ended on March 29, 2013, and since that date, Plaintiff has not been under a disability,

as defined in the Social Security Act. (Tr. 49).

   D.   **Analysis**

First and foremost, the Court notes that Plaintiff is proceeding *pro se* in this action. "'[H]owever inartfully pleaded,' allegations in a *pro se* complaint are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Although liberal construction requires active interpretation of the filings of a *pro se* litigant … it has limits." *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citing *Franklin*, 765 F.2d at 85). "Liberal construction does not require a court to conjure allegations on a litigant's behalf." *Id.* (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). And, "*pro se* parties must still brief the issues advanced 'with some effort at developed argumentation.'" *Snyder v. United States*, 23 F. App'x 212, 213 (6th Cir. 2001) (quoting *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999)).

Liberally construed, the Plaintiff advances four arguments in his Motion for Summary Judgment. (Doc. # 13). First and throughout his Motion, Plaintiff appears to challenge the ALJ's credibility determination. Second, Plaintiff takes issue with the ALJ's conclusion that medical improvement occurred. *Id.* at 2-3. Third, Plaintiff contests the ALJ's severity determination for his impairments. *Id.* at 2, 5, 8-9. And fourth, Plaintiff argues that the ALJ's RFC assessment and his conclusion that Plaintiff is not disabled is not supported by substantial evidence. *Id.* at 2-7, 8-9. The Court will consider each argument in turn.

### 1. *The ALJ did not err in assessing Plaintiff's credibility.*

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.*

If the Plaintiff's complaints regarding the intensity and persistence of his symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 WL 374186 at *4). "The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id.* "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248.

After making a credibility determination, the ALJ must explain that decision with enough specificity "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight." 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. "Blanket assertions that the

9

claimant is not believable will not pass muster, nor will explanation as to the credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that conclusion. *Id.*

Although not argued directly, the Plaintiff's Motion for Summary Judgment includes multiple statements about his conditions and symptoms, and thus, appears to take issue with the ALJ's credibility determination. (Doc. # 13 at 2, 5). Any alleged error with the ALJ's credibility determination is belied by the record.

The ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. 166). However, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not credible." *Id.*

As for Plaintiff's physical conditions, the ALJ explained that Plaintiff's testimony regarding his "residual left shoulder limitations," his back, and his "left toe issues" were inconsistent with the medical evidence, disproved by physical examinations, and discounted by Plaintiff's activities of daily living, as well as his recent employment in physically rigorous jobs. (Tr. 166-168). Moreover, the ALJ also determined that Plaintiff's "reports of pain" were "not entirely credible" and that such a conclusion was supported by "references to exaggerated complaints and suggestions of drug-seeking or drug diversion" in his medical records. (Tr. 168).

As for Plaintiff's mental-health conditions, the ALJ further explained that the medical evidence indicated the Plaintiff's mental-health conditions were not particularly limiting. *Id.* In addition to the lack of treatment records or mental-health complaints since

10

mid-2012, the ALJ found that the findings from a July 2013 consultative mental-health examination were inconsistent with the Plaintiff's subjective mental-health complaints. *Id*. The ALJ also relied on the Plaintiff's testimony at the administrative hearing, where he "did not allege any mental health complaints." *Id*.

Moreover, the ALJ determined that Plaintiff's subjective mental-health complaints were inconsistent with his "extensive activity level since his alleged [disability] onset date." (Tr. 169). Specifically, the ALJ noted that the Plaintiff "is, by his own reports, an up and coming musician who spends several hours per day writing, recording, producing, and promoting music." *Id*. In pursuit of his musical ambitions, the Plaintiff also claims to have performed live concerts. *Id*. The Plaintiff "has also held a number of traditional jobs, [temporarily] participated in college courses at Northern Kentucky University, and obtained his real estate license since his alleged [disability] onset date," and engages in "extensive social activities," including "going to clubs, attending church services, and socializing with friends and family members. *Id*.

As detailed above, the ALJ found that the medical evidence, Plaintiff's activities of daily living, and his lack of treatment did not comport with Plaintiff's allegations of pain and limitation. Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of his symptoms were not entirely credible. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 2. *The ALJ did not err in concluding that medical improvement occurred.*

"Medical improvement is any *decrease* in the medical severity of the claimant's

impairment which was present at the time of the prior favorable decision." *Kennedy*, 247 F. App'x at 765. "Medical improvement 'is determined by a comparison of prior and current medical evidence.'" *Id.* (citing 20 C.F.R. § 404.15694(b)(1)). "And a medical improvement is related to an individual's ability to work only 'if there has been a decrease in the severity … of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [Plaintiff's] functional capacity to do basic work activities.'" *Id.* (citing 20 C.F.R. § 404.15694(b)(3)).

The ALJ determined that the "medical evidence support[ed] a finding that, as of March 29, 2013, there had been a decrease in [the] medical severity of the [Plaintiff's] impairments." (Tr. 165). Specifically, the ALJ relied on the surgical repair of Plaintiff's left rotator cuff and the medical records from mid-2012, which demonstrate that "he was reporting no residual problems relating to his left shoulder." *Id.* In further support of his conclusion that the Plaintiff experienced medical improvement, the ALJ relied on the fact that "[t]he doctor treating [Plaintiff's] left shoulder problem cleared him to return to work" in mid-2012 "without restrictions." *Id.*

The Plaintiff appears to argue that substantial evidence does not support the ALJ's finding that medical improvement occurred. (Doc. # 13 at 2-3). Despite being "dismissed from [treatment with] Commonwealth Orthopedics," the Plaintiff continues to claim he "still has complications with left shoulder." *Id.* at 2. The ALJ provided a detailed analysis of the medical history of Plaintiff's left shoulder and his decision to ignore Plaintiff's statements concerning the intensity, persistence, and limiting effects of his shoulder condition:

> Allegations regarding residual left shoulder limitations are not entirely credible based on the medical evidence … [T]he claimant told one of his

> orthopedic physicians, Dr. Forest Heis, that his left shoulder was completely pain free by mid-2012. A contemporaneous physical examination showed the claimant had a full range of motion and normal strength in his left shoulder. The claimant did not report any additional issues with his left shoulder until October 2013, at which time he told Dr. Heis he started having some pain since he had been carrying his backpack on his left shoulder while attending college classes. Dr. Heis determined this was a strain or overuse injury and instructed the claimant to take some anti-inflammatories and restart therapy exercises he previously performed. When the claimant next followed-up with Dr. Heis in May 2014, he noted his shoulder was doing "well" with no more "occasional" pain. A physical examination at that time showed the claimant retained full ranges of motion and strength in his shoulder. Dr. Heis concluded the claimant's shoulder was doing "very well" and recommended no additional treatment.

(Tr. 166-167).

The ALJ provided a thorough and accurate recitation of the medical evidence. Despite the Plaintiff's allegations concerning a 2011 automobile accident with Sure Thing Pest Control Company and a 2012 automobile accident caused by Plaintiff's ingestion of a "tainted beverage"—both of which occurred prior to March 29, 2013, the Plaintiff's disability end date—the objective medical evidence does not support Plaintiff's subjective complaints of symptoms or pain. By mid-2012, Plaintiff reported that his left shoulder was pain free and his physical examinations showed full range of motion and normal strength. Aside from a small set back in October 2013, which required the Plaintiff to take anti-inflammatories, his shoulder injury has resolved, as demonstrated by his May 2014 medical records. Although the ALJ determined that Plaintiff's history of left shoulder surgery continues to be a severe impairment, the ALJ reasonably found that this impairment was no longer of a disabling severity as of March 29, 2013. Any claim of error with this portion of the ALJ's analysis is rejected.

### 3. The ALJ did not err in determining the severity of Plaintiff's current impairments.

An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities," which are defined as "those abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Basic work activities include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985)).

When considering the Plaintiff's current impairments, the ALJ determined that the Plaintiff had five severe impairments: a history of left shoulder surgery, degenerative disc disease, residual pain status post left second toe injury, PTSD, and ADHD. (Tr. 162). Despite Plaintiff's complaints, the ALJ found that Plaintiff's migraine headaches, cysts, and lung issues resulted in "no more than minimal limitations on his ability to engage in work activity," and thus, were non-severe impairments. (Tr. 163).

Although not argued directly, in his Motion for Summary Judgment, the Plaintiff refers to several of his impairments as "severe," and thus, appears to argue that the ALJ erred in determining the severity of his impairments. (Doc. # 13 at 2, 5, 8-9). Because substantial evidence supports the ALJ's determination, the Court finds no error.

The Plaintiff claims that his migraine headaches are severe. (Doc. # 13 at 8). Apart from Plaintiff's self-serving statement that "Severe migraines and dizzy spells also plagued Mr. Taylor due to previous car accidents resulting in Mr. Taylor's withdrawing from Northern Kentucky University Fall Semester of 2013 due to all medical ailments," the record evidence does not support a finding that the Plaintiff has a severe headache condition. *Id.* As the ALJ explained, a "visit to the emergency room in December 2014 is the only documented report of headaches since" March 29, 2013. (Tr. 163). Instead of migraines, references in those medical records to "contemporaneous sinus pain/problems" "suggest" the Plaintiff had "an acute sinus headache." *Id.* The only other evidence in the record related to headaches is a statement to Plaintiff's primary care provider in March 2012. *Id.* In response to Plaintiff's complaint about "intermittent headaches," his doctor "advised him to continue taking over-the-counter Tylenol." *Id.* "There are otherwise no headache complaints in the treatment record and some notes even indicate the [Plaintiff] denied any such issues. *Id.*

Plaintiff also takes issue with the ALJ's decision to classify his cyst issue as a non-severe impairment. (Doc. # 13 at 5). The Plaintiff claims that he had cysts on his chin and scrotal area, which "were surgically removed and are currently causing Mr. Taylor loss of bladder control." *Id.* The ALJ noted that Plaintiff's medical records confirmed that he "pursued consultation with a dermatologist due to cysts on his chin and right inner thigh in February 2013." (Tr. 163). Although Plaintiff's dermatologist "conducted outpatient excision procedures to remove these cysts," there is no evidence in the record detailing "additional follow-up related to these cysts or other dermatological complaints since mid-2013." *Id.* Accordingly, the ALJ concluded that the record evidence

demonstrated that Plaintiff's cyst condition "resolved in less than twelve months" and did not "cause more than minimal limitations on the ability to engage in work activity." *Id.*

Put simply, substantial evidence supports the ALJ's determination that neither Plaintiff's alleged migraine condition nor his cyst condition is severe. Plaintiff's reliance on his own subjective beliefs, statements, and testimony is misplaced. Although subjective complaints or symptoms are considered, the record must contain objective medical evidence establishing the underlying impairments. 20 C.F.R. §§ 404.1508; 416.908. The ALJ properly considered the objective medical evidence and he did not err in determining the severity of Plaintiff's impairments.

### 4. *The ALJ's RFC findings are supported by substantial evidence.*

A RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). In simpler terms, the RFC is "what an individual can still do despite his or her limitations." *Id.* "In assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [the ALJ] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). The ALJ is only required to incorporate those limitations that he finds credible in the RFC assessment. *Irvin v. Social Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Plaintiff's general complaint that he is entitled to benefits indicates a disagreement with the ALJ's RFC assessment and conclusion that the Plaintiff's disability

ended on March 29, 2013. (Doc. # 13). Accordingly, Plaintiff's complaint is liberally construed as an argument that the ALJ's RFC findings are not supported by substantial evidence.

Of course, it does not matter if substantial evidence does support his disability, so long as it also supports a finding of "not disabled." *Her*, 203 F.3d at 389-90 (holding that "[e]ven if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the decision reached") (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also Listenbee*, 846 F.2d at 349. As a result, it does not matter if Plaintiff, or even this Court, believes substantial evidence supports a different disability determination. All that is required of the ALJ is that he render a decision that is supported by substantial evidence. The ALJ has done so here.

At Step Seven of the analysis, the ALJ carefully reviewed the record and found that the Plaintiff was capable of doing medium work with the additional limitations specified. (Tr. 165-171). The ALJ incorporated supported physical limitations, detailed why other physical and mental limitations were not incorporated, considered the objective medical evidence, appropriately weighed and detailed the medical opinion testimony, and properly discounted Plaintiff's subjective symptoms to the extent that they lacked credibility. *Id.* Because the ALJ incorporated the limitations that he found credible in the RFC and properly weighed the medical opinion testimony, there is no error. Therefore, substantial evidence supports the ALJ's determination that Plaintiff was not disabled.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff's disability ended and that he is not entitled to benefits was supported by substantial evidence.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Plaintiff King Taylor's Motion for Extension of Time for Filing Additional Evidence (Doc. # 16) is **denied**;

(2) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(3) Plaintiff's Motion for Summary Judgement (Doc. # 13) is hereby **DENIED**;

(4) Defendant's Motion for Summary Judgement (Doc. # 15) is hereby **GRANTED**; and

(5) A Judgement in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 18th day of January, 2018.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\Covington\17-44 Taylor MOO.docx